IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:23-cv-867-JLK

BIOMEDICAL DEVICE CONSULTANTS &
LABORATORIES OF COLORADO, LLC,

      Plaintiff,

v.

VIVITRO LABS INC.,

      Defendant.

---

**DEFENDANT VIVITRO'S REPLY IN SUPPORT OF ITS
MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION [ECF NO. 20]**

---

1

**TABLE OF CONTENTS**

I.   INTRODUCTION ................................................................................................... 3

II.   ARGUMENT ......................................................................................................... 4

    A.   BDC fails to address the relatedness of ViVitro's trade show contacts to BDC's infringement claim. .......................................................................................... 4

    B.   BDC ignores the purposeful nature of ViVitro's contacts with each state. ......................... 6

    C.   The *combination* of contacts establishes jurisdiction in both California and Massachusetts. ................................................................................................. 8

    D.   BDC's reading of *Synthes* conflates the Federal Circuit's general and specific personal jurisdiction analyses. ....................................................................................... 11

III.   CONCLUSION ..................................................................................................... 12

CERTIFICATE OF SERVICE ..................................................................................... 14

Defendant ViVitro Labs Inc. ("ViVitro" or "Defendant") hereby submits this Reply in support of its Motion to Dismiss for Lack of Personal Jurisdiction [ECF No. 20] (the "Motion to Dismiss").

## I.    INTRODUCTION

BDC does not dispute that ViVitro does not have minimum contacts with Colorado that would authorize this Court to exercise jurisdiction under Fed. R. Civ. P. 4(k)(1); it relies *solely* on Rule 4(k)(2) to confer jurisdiction here. *See generally* Resp. to Mot. to Dismiss, ECF No. 25. The parties agree that Rule 4(k)(2) cannot be utilized unless there is no other forum where jurisdiction would have been proper at the time this suit was filed. *See* Resp. to Mot. to Dismiss at 3–6; Mot. to Dismiss at 9–10. ViVitro described sufficient contacts with California and Massachusetts to establish specific personal jurisdiction in both forums, satisfying the negation requirement and precluding the application of Rule 4(k)(2). In response, BDC does not dispute any of the facts in the Mouneimné declaration about ViVitro's contacts with Massachusetts and California; BDC merely contends those contacts are insufficient. So the determinative question for this Motion to Dismiss is whether specific personal jurisdiction existed in California or Massachusetts at the time of filing this suit. The answer is yes, so the Motion to Dismiss should be granted.[1]

---

[1] Before the Court rules on the pending Motion for Preliminary Injunction, ECF No. 8, the Motion to Dismiss must be considered. *See U.S. Ass'n of Importers of Textiles & Apparel v. U.S. Dep't of Commerce*, 413 F.3d 1344, 1348 (Fed. Cir. 2005) ("Failing to consider [the question of jurisdiction before preliminary injunction motion] was legal error."). "At a minimum, [this Court] must determine that there is a 'substantial probability' that it has jurisdiction" over the

## II.    ARGUMENT

### A.    BDC fails to address the relatedness of ViVitro's trade show contacts to BDC's infringement claim.

BDC argues that neither California nor Massachusetts exerts personal jurisdiction based on attendance of trade shows. However, BDC fails to mention that almost all its cited cases involved trade show or conference contacts that were *entirely* unrelated to the claims at issue:

- In *Kinetics Noise Control, Inc. v. ECORE Int'l, Inc.*, No. 2:10-CV-7902-PSG, 2011 WL 13217669, at *5 (C.D. Cal. Jan. 12, 2011), the plaintiff failed to "establish that even a small part of Plaintiff's claim arises out of Defendant's" attendance at California trade shows[2];

- In *SDS Korea Co. v. SDS USA, Inc.*, 732 F. Supp. 2d 1062, 1080 (S.D. Cal. 2010), the Court found no specific personal jurisdiction *where plaintiff did "not assert any of its alleged injuries resulted from [defendant's] participation in the Long Beach trade show*" (emphasis added);

- In *Citadel Inv. Group, LLC v. Citadel Capital Co.*, 699 F. Supp. 2d 303, 310 (D.D.C. 2010), the conference alone did not establish specific personal jurisdiction because there was no evidence that the investment services at issue in trademark infringement suit were sold as result of the conference, as required by D.C.'s long-arm statute;

claims before taking up the question of injunctive relief. *Celgard, LLC v. LG Chem, Ltd.*, 624 F. App'x 748, 751–52 (Fed. Cir. 2015) (citing *United States v. First Nat. City Bank*, 379 U.S. 378, 390 (1965) (holding district court erred by issuing injunction without first resolving motion to dismiss for lack of personal jurisdiction)).

[2] *Kinetics* is not a patent infringement case, so the court also applied the Ninth Circuit's "but-for" test for specific personal jurisdiction in its due process analysis. But the parties agree that the Federal Circuit's test for specific personal jurisdiction governs in this case.

4

- In *Am. Orthodontics Corp. v. MidAtlantic Orthodontics, Inc.*, No. 3:17-cv-01129-BEN-AGS, 2017 WL 4151241, at *3 (S.D. Cal. Sept. 18, 2017), the court explained that the plaintiff "ha[d] not demonstrated that its claims ar[o]se out of or relate[d] to [defendant's] exhibition at the show";

- In *Berthold Types Ltd v. European Mikrograf Corp.*, 102 F. Supp. 2d 928, 934 (N.D. Ill. 2000), the court found trade show attendance and upcoming seminar was insufficient to establish specific personal jurisdiction because plaintiff did not allege the contacts "caused the harm complained of";

- In *Euro-Pro Operating LLC v. Scutte*, No. 1:05-CV-11946-DPW, 2006 WL 239802, at *3 (D. Mass. Jan. 31, 2006), none of the alleged trade secret misappropriation was alleged to have occurred during the conferences in question;

- In *Ace Am. Ins. Co. v. Oyster Harbors Marine, Inc.*, 310 F. Supp. 3d 295, 304 (D. Mass. 2018), none of defendant's contacts with Massachusetts—including attendance at trade shows, website, or shipment or installation of other products in the forum—bore any connection to the product that was the subject of the breach of contract claims.

Read correctly, these cases demonstrate the importance of the "arising out of or relating to" factor in the minimum contacts analysis and support the *granting* of ViVitro's motion. *See* Mot. to Dismiss at 14–17.

Here, BDC's Complaint is based on ViVitro's offers to sell and marketing efforts at the trade shows. *See* Compl. ¶¶ 20, 25, ECF No. 1. In fact, BDC's only allegations of infringing conduct in the U.S. are that the Accused Product was "imported" into California and Massachusetts, after which it was "displayed" and "offered for sale" at the two trade shows in those states. *Id.*; *see also* ECF No. 8-1 ("Weinberg Decl.") ¶ 38 (stating he saw the Accused Product "in operation" and saw ViVitro "marketing and selling" it). So these contacts form the *entire basis* of BDC's infringement claim. In contrast to the cases listed above, a California

5

district court has confirmed that, where defendants "attended, attempted to sell and handed out information about the [accused] Product at a convention" in California, such contact was clearly related to plaintiff's claim of patent infringement. *Greenbroz, Inc. v. Laeger Built, LLC*, No. 3:16-cv-2946-CAB-BLM, 2017 WL 1427139, at \*3–4 (S.D. Cal. Apr. 21, 2017).

**B.        BDC ignores the purposeful nature of ViVitro's contacts with each state.**

BDC argues that visiting potential customers also does not establish jurisdiction, citing *InfoNow Corp. v. Zyme Solutions, Inc.* for support. In that case, the out-of-state defendant had one meeting in Colorado with a potential out-of-state customer to "get acquainted." No. 1:12-cv-03255-MSK-MEH, 2013 WL 4052183, at \*5 (D. Colo. Aug. 6, 2013). The court explained that this *single meeting* was insufficient to show that defendant purposefully availed itself of the privilege of doing business in Colorado because the potential customer *was not a resident of Colorado*—the contact with Colorado was merely fortuitous. *Id.* at \*6.

But ViVitro's visits to California are not merely fortuitous. ViVitro has visited California *twice*, during which it had discussions relating to the Accused Product with at least *ten* different potential California customers.[3] Certainly, physical entry into a forum, especially to visit potential customers residing in that forum, is relevant to the purposeful availment factor. *See Walden v. Fiore*, 571 U.S. 277, 285 (2014) (explaining that physical entry is a relevant contact to the minimum contacts analysis). Indeed, one of the cases cited by BDC concluded that eight meetings with potential customers in the relevant forum was a significant fact to establish

---

[3] That ViVitro has chosen to focus its efforts on California (and Massachusetts) should be no surprise to BDC: some of the largest heart valve makers reside in these forums.

purposeful availment. *Compañía de Inversiones Mercantiles S.A. v. Grupo Cementos de Chihuahua, S.A.B. de C.V.*, No. 1:15-CV-02120-JLK, 2018 WL 10561511, at \*5 (D. Colo. Dec. 12, 2018), *cited in* Resp. to Mot. to Dismiss at 9.

BDC also attempts to characterize ViVitro's contacts with Massachusetts as "isolated" and "void of any purposeful intent to avail itself of the privilege of conducting activities" in Massachusetts necessary to fall within the reach of Section 3(a) of Massachusetts' long-arm statute. Resp. to Mot. to Dismiss at 11. BDC cites to *Droukas v. Divers Training Academy, Inc.*, where the court explained that a single sale, negotiated by phone from outside the forum, was too isolated to show that the seller had purposefully availed itself of the privilege of conducting activities in Massachusetts. 375 Mass. 149, 153–54, 157–59 (1978). As an initial note, the First Circuit Court of Appeals subsequently explained that the outcome in *Droukas*, contrary to BDC's characterization, "rested on constitutional rather than statutory grounds." *Nova Biomedical Corp. v. Moller*, 629 F.2d 190, 192 n.2 & 194 n.6 (1st Cir. 1980) (noting that the Massachusetts Supreme Judicial Court later explained that the defendant in *Droukas* literally transacted business in Massachusetts per Section 3(a), so the case turned on due process). That Court recognized that the Massachusetts Supreme Judicial Court intended that Section 3(a) be "construed broadly"—such that even an isolated contact can satisfy the "transacting any business" requirement. *Id.* at 193–94.

Regardless, ViVitro's contacts with Massachusetts here are not isolated or void of purposeful intent. ViVitro sent its representatives with the Accused Product into the forum to market the Accused Product, in addition to soliciting purchase orders from several potential customers in the forum. All these activities have been done for the purpose of eventually

finalizing sales of the Accused Product and therefore demonstrate that ViVitro is deliberately transacting business in Massachusetts.

**C.**    **The *combination* of contacts establishes jurisdiction in both California and Massachusetts.**

Even if the trade shows, potential customer visits, and solicitations to potential customers, separately, were insufficient to establish specific personal jurisdiction (which they are not), the combination of those contacts *is* sufficient. In both California and Massachusetts, ViVitro not only attended a trade show, but it also paid to host a booth, spoke with potential customers, brought the Accused Product into the state, and gave demonstrations of the Accused Product at the trade show. Regarding ViVitro's contacts with California, *in addition to* the trade show-related visits and activities, ViVitro representatives physically traveled to California twice more. During those visits, ViVitro met with at least ten different potential California customers, promoted the Accused Product, and solicited purchase orders from eight potential California customers. Regarding ViVitro's contacts with Massachusetts, *in addition to* the trade show-related visits and activities, ViVitro has solicited purchase orders from four potential Massachusetts customers.

BDC contends that ViVitro's contracts in California are insufficient because ViVitro demonstrated a prototype of the Accused Product rather than a saleable product, did not bring the Accused Product (or a prototype) on its later visits to California, and did not *close* any sales as a result of the visits. Resp. to Mot. to Dismiss at 7, 11. But, aside from improperly parsing the contacts and ignoring the demonstrations and other efforts at the trade show, the physical presence of the Accused Product or a completed sale is not necessary, particularly given the combination of contacts. *Greenbroz*, 2017 WL 1427139, at *3 (finding attendance and marketing

8

of accused product at a convention alone "sufficient to satisfy" purposeful availment prong, while lack of physical presence of the product at the convention was "irrelevant"). And while BDC criticizes the trade show demonstrations now, BDC was present at those trade shows and seemingly aware that the demonstrations were performed with a prototype, yet it still decided to bring this suit alleging that ViVitro's actions there are infringing. *See* Compl. ¶¶ 20, 25; Weinberg Decl. ¶¶ 38, 42, 44.

BDC also cites *Medical Solutions, Inc. v. C Change Surgical LLC*, 541 F.3d 1136 (Fed. Cir. 2008), arguing that trade show contacts are insufficient where there is "vague evidence of product use at [the trade] show[s.]" Resp. to Mot. to Dismiss at 10, 12. In that case, the sole issue on appeal was whether the plaintiff had made a *prima facie* showing of personal jurisdiction over defendant for "causing tortious injury in the District of Columbia by an act or omission in the District of Columbia," under D.C.'s long-arm statute, by *using* the infringing product. *Medical Solutions*, 541 F.3d at 1139. The plaintiff argued that the defendant had *used* the product by "actively demonstrat[ing]" it at a trade show. *Id.* at 1140–41. But the only evidence of the alleged "demonstration" was a declaration from the plaintiff that defendant's representative showed at least one attendee how to remove a part from the device—which "f[e]ll short of practicing all of the elements of any one claim[.]" *Id.* at 1141. The Federal Circuit explained that this evidence did not show that the device was "put into service so as to constitute an infringing use," so D.C.'s long-arm statute did not permit the exercise of jurisdiction. *Id.* Since the long-arm statute was not satisfied, the Federal Circuit affirmed the district court's dismissal and did not reach the due process analysis. *Id.* at 1141 n.5.

*Medical Solutions* is inapposite because it applies D.C.'s long-arm statute, which *requires* tortious conduct. In contrast, the relevant provision of Massachusetts's long-arm statute does *not* require tortious conduct, but rather that the defendant "transact[] any business" in Massachusetts; and California's long-arm statute is coextensive with the limits of due process. *See* Mot. to Dismiss at 13, 16. Thus, the jurisdictional analyses at hand ask different questions than in *Medical Solutions*, and a far broader range of ViVitro's contacts are relevant. ViVitro does not have to establish that it *used* the Accused Product at the trade shows for its contacts from the trade shows to be relevant and sufficient under the Massachusetts long-arm statute and due process. Even so, if "use" or even an offer to sell were required, similar to *Medical Solutions*, that standard is also satisfied: BDC itself alleged that the Accused Product was "imported" to and "displayed and *offered for sale*" at the trade shows, Dr. Weinberg declared that he witnessed the Accused Product "in operation" at the Massachusetts trade show, and Mr. Mouneimné likewise declared that ViVitro "provided demonstrations" of the Accused Product at both trade shows. Compl. ¶ 25; Weinberg Decl. ¶ 38; ECF No. 20-1 ¶¶ 16, 18. BDC argues that the California and Massachusetts contacts are too isolated to establish specific personal jurisdiction in the respective state forums, even though it relies upon those same (and even *fewer* of the) purportedly "isolated" contacts in its Complaint, in claiming jurisdiction exists in the United States under 4(k)(2) applies. It cannot be both. As previously noted, there is no difference between the test of specific jurisdiction under 4(k)(2) and 4(k)(1) except for the forum (i.e., the whole United States or one state). Motion to Dismiss at 15 n.7 (citing *Touchcom, Inc. v. Bereskin & Parr*, 574 F.3d 1403, 1416 (Fed. Cir. 2009)).

**D.**     **BDC's reading of *Synthes* conflates the Federal Circuit's general and specific personal jurisdiction analyses.**

BDC's arguments about *Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com de Equip. Medico*, 563 F.3d 1285 (Fed. Cir. 2009) are fatally flawed. As an initial matter, BDC argues that *Synthes* is inapposite because it analyzed contacts with the United States as a whole under Rule 4(k)(2) rather than contacts with a state under Rule 4(k)(1). Resp. to Mot. to Dismiss at 12–14. But neither BDC nor the cases it cites contend with *how* the due process analysis under Rule 4(k)(2) differs in any meaningful way from the due process analysis under Rule 4(k)(2). *See id.* Indeed, the Federal Circuit in *Touchcom* expressly stated that the only difference is the forum: "while *the test* of specific jurisdiction under 4(k)(2) *involves the same steps* as under 4(k)(1), we must consider appellees 'contacts with the nation as a whole.'" *Touchcom, Inc.*, 574 F.3d at 1416 (emphasis added) (quoting *Synthes*, 563 F.3d at 1296). BDC ignores *Touchcom* entirely. *See generally* Resp. to Mot. to Dismiss.

BDC also argues that *Synthes* is factually distinguishable from this case because the defendant in *Synthes* had several other contacts with the forum. Resp. to Mot. to Dismiss at 12–15. However, a thorough reading of *Synthes* reveals exactly which contacts the Federal Circuit Court relied upon in finding of minimum contacts via *specific* personal jurisdiction, rather than in its *general* personal jurisdiction analysis. *Synthes*, 563 F.3d at 1297–99. The Federal Circuit explained that defendant had purposefully availed itself of the forum because: defendant's representative brought the accused products into the forum, defendant's representatives attended a trade show in the forum, the accused product was displayed at the trade show, and the trade show was part of defendant's sales effort involving the forum. *Id.* at 1297–98. As to the "arising under or related to" prong, the Federal Circuit found that plaintiff's patent infringement claim

11

arose directly out of defendant's bringing the accused products into the forum, displaying them at the trade show, and trying to generate interest in defendant's products among attendees of the trade show. *Id.* at 1298. So while *Synthes* does not stand for the proposition that mere *attendance* at a single trade show, without more, suffices, it *did* find minimum contacts where the defendant imported the accused products and displayed them at a trade show, through its representatives and as part of defendant's sales efforts. *Id.* at 1299.[4] All these contacts *and more* exist in the present case. Under *Synthes*, ViVitro's Motion to Dismiss should be granted.

## III.    CONCLUSION

For the reasons set forth in this Reply and the Motion to Dismiss, ViVitro respectfully requests that the Court dismiss this case for lack of personal jurisdiction.

Dated: May 24, 2023.                              Respectfully submitted,

                                                  */s/ Warren J. Thomas*

                                                  Warren J. Thomas
                                                  John W. Harbin
                                                  Meunier Carlin & Curfman LLC
                                                  999 Peachtree Street NE, Suite 1300
                                                  Atlanta, GA 30309
                                                  Telephone: (404) 645-7700
                                                  Email: wthomas@mcciplaw.com
                                                          jharbin@mcciplaw.com

                                                  Carolyn J. Fairless
                                                  Jacob A. Rey

---

[4] The cases cited by ViVitro as properly applying *Synthes*, binding Federal Circuit precedent, recognize the delineation between the general and specific personal jurisdiction analyses. *See* Mot. to Dismiss at 13–17. And, contrary to BDC's assertion at page 14 of its Response, there is no such thing as "binding Northern District of Illinois precedent" for fellow federal district courts.

WHEELER TRIGG O'DONNELL LLP
370 Seventeenth Street, Suite 4500
Denver, CO 80202-5647
Telephone: (303) 244-1800
Email: fairless@wtotrial.com
       rey@wtotrial.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 24, 2023, I electronically filed the foregoing **DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION** with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record.

*s/Warren J. Thomas*